

NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

**Signed June 13, 2006**

*[signature]*

**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CANDACE JEANENE BUFFORD, | § | CASE NO. 05-87178-BJH-13 |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION ON CONFIRMATION OF CHAPTER 13 PLAN

This case presents a novel issue in this district–whether the interest rate provided in a Chapter 13 plan to the claim of a creditor with a purchase money security interest in a motor vehicle, as set forth in the Supreme Court's decision in *In re Till,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), applies to debts incurred within the 910-day period preceding the petition date under the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

The Debtor's present bankruptcy case was filed on December 22, 2005, therefore the amendments to the Bankruptcy Code enacted by the BAPCPA are applicable to this case.[1] The Court held a hearing on confirmation of the Debtor's Chapter 13 Plan ("Plan"). Velocity Credit

---

[1] The "910-day provision" became effective October 17, 2005.

**Memorandum Opinion on Confirmation Of Chapter 13 Plan** **Page 1**

Union ("Velocity") filed an objection to confirmation of the Plan because it did not provide payment of its secured claim at the contract rate of interest. The Court took the matter under advisement for the parties to submit post-hearing briefs. After consideration the Court finds that Velocity's objection to confirmation of the Plan should be overruled, and that the Debtor must file an amended plan with interest provided at a rate consistent with this opinion on the claim filed by Velocity.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. The matter is core, pursuant to 28 U.S.C. § 157(b)(2)(A), (B) & (O). This Memorandum Opinion constitutes findings of fact and conclusions of law, pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

## I. Background Facts

On April 10, 2004, the Debtor purchased a 2003 Nissan Altima (the "Vehicle"). Centrix Financial, LLC has a purchase money security interest in the Vehicle. The Debtor filed her Chapter 13 petition and Plan on December 22, 2005. Thus, the Vehicle was purchased 621 days prior to the date the petition was filed. Velocity filed a proof of claim in the Debtor's bankruptcy case on behalf of Centrix Financial, LLC, on January 17, 2006, totaling $19,820.70. Velocity amended its claim on January 31, 2006, changing the amount to $21,507.35, and included an interest rate of 17.9%, as provided in the loan agreement with the Debtor.

In her Plan, the Debtor provides for the claim of Centrix Financial, LLC to be valued at $19,820.00 and paid at 6.5% per annum over 60 monthly installments. In its objection to confirmation of the Plan proposed by the Debtor, Velocity does not object to the Debtor's valuation of the Vehicle, but does object to using any other interest rate than the contract rate of

17.9%. The basic thrust of Velocity's argument is that an amendment made to the Bankruptcy Code by the BAPCPA protecting creditors with purchase money security interests on recently purchased motor vehicles from having their claims bifurcated, also protects them from having the contract rate of interest reduced in a plan of reorganization.

## II. Issues

Is the interest rate provided in a debtor's Chapter 13 plan to the claim of a creditor secured by a purchase money interest in a motor vehicle obtained within the 910-day period preceding the petition date controlled by the Supreme Court's decision in *Till*, or does the contract rate apply? And does the adequate protection requirement in 11 U.S.C. § 1325(a)(5)(B)(iii)(II) affect this determination?

## III. Analysis

Since the argument at hand involves the interpretation of an amendment to the Bankruptcy Code, the Court's analysis should begin with the language of the statute and its related provisions. *See Kellogg v. United States (In re West Texas Marketing Group)*, 54 F.3d 1194, 1200 (5th Cir.) *cert. denied* 516 U.S. 991, 116 S.Ct. 523 (1995) ("As with any statutory question, we begin with the language of the statute").

Section 1322 of the Bankruptcy Code addresses the contents of a plan of reorganization and states that a plan may modify the rights of a creditor whose claim is secured, other than a claim secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) provides:

> (b) subject to subsections (a) and (c) of this section, the plan may–
>
>> (2) modify the rights of holders of secured claims, other than a claim that is secured only by a security interest in real property that is the debtor's principal

residence, or of holders of unsecured claims, or leave un affected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

Section 1325 of the Bankruptcy Code sets forth the requirements for confirmation of a Chapter 13 plan. 11 U.S.C. § 1325. With respect to each allowed secured claim provided for by a plan, § 1325(a)(5) generally requires that either (1) the holder of the claim accepts the plan; (2) the holder of the claim retains its lien and the debtor makes equal monthly payments, which total not less than the allowed amount of such claim, over the term of the plan or until the debt is paid in full; or (3) the debtor surrenders the collateral to the secured creditor. 11 U.S.C. §1325(a)(5).[2]

---

[2]Section 1325(a)(5) states:

(a)    except as provided in subsection (b), the court shall confirm a plan if–

(5)    with respect to each allowed secured claim provided for by the plan–

    (A)    the holder of such claims has accepted the plan;

    (B)(i)    the plan provides that–

        (I)    the holder of such claim retains a lien securing such claim *until the earlier of–*

            *(aa)    the payment of the underlying debt determined under nonbankruptcy law; or*

            *(bb)    discharge under section 1328; and*

        *(II)    without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law,*

    (ii)    the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; *and*

    *(iii)    if–*

        *(I)    property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and*

        *(II)    the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or*

    (C)    the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5) (language added by the BAPCPA is italicized).

Prior to the effective date of the BAPCPA, a plan only had to provide a secured car creditor with retention of its lien and payment of the present value of the collateral as of the petition date in order for the debtor to retain the vehicle. The amendments provided in the BAPCPA modified § 1325(a)(5) by restricting the ability of debtors to bifurcate certain claims of creditors secured by a purchase money security interest in a motor vehicle by adding the following paragraph immediately after § 1325(a)(9):

> For the purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.[3]

**The Effect of Making Section 506 Inapplicable**

Section 506(a) of the Bankruptcy Code allows the bifurcation of the claim of a secured creditor into two claims–a secured claim for the actual value of the collateral as of the petition date, and an unsecured claim representing the difference between that actual value and the amount owed on the collateral under the loan agreement.[4] *See* 11 U.S.C. § 506. This is known as "stripping down" the secured creditor's lien position from the contract amount to an amount capped at the actual value of the collateral. *See Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992). A debtor then pays the secured claim under the plan in

---

[3] This paragraph modifies paragraph (5), but was not given its own number and follows paragraph (9). For convenience, the Court will refer to this unnumbered paragraph as the "910-day provision" throughout this opinion.

[4] In the case of a creditor secured by a purchase money security interest in a motor vehicle that begins to depreciate quickly after it is driven off the lot, and especially where a debtor has missed payments before filing a bankruptcy petition, there is usually a significant difference between these two numbers.

accordance with § 1325(a)(5) and pays a small percentage of the unsecured claim, along with other unsecured creditors' claims, based on the debtor's disposable income.  This is "commonly known as the 'cramdown option' [of plan confirmation] because it may be enforced over a claim holder's objection."  *In re Till,* 541 U.S. 465, 468-69, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) (citing *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 957, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997)).  In this district, at least, this option usually results in very little being paid above the secured claim amount.

No doubt, the drafters of the 910-day provision intended to eliminate the ability of debtors to bifurcate, or "strip down" secured claims on these recently purchased vehicles.[5]  Some have also argued, probably because of the title of § 506–"Determination of secured status," that by making § 506 inapplicable to 910-day car claims, the amended Code provision has had the unintended effect of making it impossible for those claims to be considered secured.  *See In re DeSardi*, 340 B.R. 790, 811-12 (Bankr. S.D. Tex. 2006) (discussing this argument and generally rejecting it); *In re Carver,* 338 B.R. 521, 525 (Bankr. S.D. Ga. 2006) ("[b]y rendering [§ 506] inapplicable to 910 claims, Congress expressly eliminated the mechanism by which they could be treated as secured claims under the Chapter 13 plan.").  This argument has been adopted by one of the leading treatises on bankruptcy:

> Language added at the end of section 1325(a) by the 2005 amendments to the Bankruptcy Code removes certain claims from the protections of 1325(a)(5). This new language states that for purposes of section 1325(a)(5), section 506 shall not apply to certain claims.  Such claims, therefore, cannot be determined to be

---

[5]*See* H.R. Rep. 109-31(I), 109th Cong., 1st Sess., 2005 WL 832198 at *17 (April 8, 2005) ("Protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use.").

allowed secured claims under section 506(a) and are not within the ambit of section 1325(a)(5).

8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006). Velocity tries to use a variation on this argument, when it argues in its brief that since § 506 provides the basis for determination of a secured creditor's claim, its elimination results in the original loan contract dictating both the value and rate of interest to be provided in a plan. However, this Court finds that this argument is misplaced. A claim is determined to be "allowed" or not pursuant to § 502 of the Code, and is determined to be either "secured" or not pursuant to state law. *See In re Montoya,* 341 B.R. 41, 44 (Bankr. D. Utah 2006); *In re Brown*, 339 B.R. 818, 821-22 (Bankr. S.D. Ga. 2006); *See also Nobelman. v. American Savings Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228, 235 (1993).

Eliminating the use of § 506 does not eliminate a creditor's secured claim. Generally, § 506(a), the provision most debtors use to bifurcate a secured car creditor's interests in a vehicle, and then later "cramdown" in a plan, describes the extent to which an allowed claim is to be treated as a secured claim for purposes of the Code, as well as how a secured claim is to be valued. *See Assoc. Commercial Corp. v. Rash*, 520 U.S. 953, 960, 117 S.Ct. 1879, 1884 (1997). Other provisions of § 506 (1) allow the holder of a secured claim to recover postpetition interest, fees, costs and charges in certain instances, (2) permit the trustee to recover certain costs and expenses from a secured creditor's collateral under certain conditions, and (3) allow the avoidance of liens that secure disallowed claims. *See* 11 U.S.C. § 506(b)-(d).

Claims are allowed or disallowed under § 502, not § 506, as Judge Dalis explained in his decision on this issue, *In re Brown*:

> Debtors misunderstand the purpose and operation of § 506. The United States Supreme Court embraced the view that:
>
> > the words "allowed secured claim" ... need not be read as an indivisible term of art defined by reference to § 506(a), *which by its terms is not a definitional provision.*  Rather the words should be read term-by-term to refer to any claim that is, first, allowed, and second, secured.
>
> *Dewsnup v. Timm,* 502 U.S. 410, 415, 112 S.Ct. 773, 776, 116 L.Ed.2d 903, 909 (1992) (construing the relationship between § 506(a) and "allowed secured claim" in § 506(d)).
>
> ***
>
> It is neither necessary nor appropriate to contort § 506(a) into a definitional provision. Other Code sections address whether a claim is "allowed" and "secured."
>
> 11 U.S.C. § 502 governs whether a claim is deemed allowed.  "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a).  In the consolidated matters before me, no objections were made to the 910 Creditors' proofs of claim.  Consequently, the 910 Claims are deemed allowed.
>
> 11 U.S.C. § 101 establishes that a debt is "secured" by a lien.  *See* § 101(37) ("The term 'lien' means charge against or interest in property *to secure payment of a debt* ....") (emphasis added).  In the consolidated matters before me, Debtors do not dispute that the 910 Creditors hold valid liens against Debtors' vehicles securing payment of an underlying debt. Consequently, the 910 Claims are secured.
>
> Because the 910 Claims are "allowed" under § 502 and "secured" by recourse to underlying collateral, they are "allowed secured claim[s]" as contemplated by § 1325(a)(5).  The 910 Claims are thus included in the present value requirement of § 1325(a)(5)(B)(ii).

*Brown*, 339 B.R. at 821.  This Court agrees.  Section 506 does not define an "allowed secured claim" for purposes of §1325(a)(5), and its inapplicability does not make other sections that determine the payment terms required of a Chapter 13 plan, absent agreement of the creditor, superfluous.

**The 910-day Provision Is Not a "Safe Harbor" Intended to Protect 910-day Car Claims from Modification under a Chapter 13 Plan**

Velocity argues that by enacting the 910-day provision, Congress clearly intended to carve out a safe harbor for automobile lenders. Velocity further argues that in doing so, the BAPCPA requires secured claims covered by the 910-day provision to be paid in full at the contract rate of interest. Basically, Velocity's argument is that the 910-day car provision prohibits the modification of not only the car's valuation, but also prohibits the modification of payment in full under the contract including the interest payments provided. Thus, making the Supreme Courts decision in *Till*, inapplicable to the determination of the rate of interest to be paid on these claims under Chapter 13 plans.

When interpreting a statutory provision, the Fifth Circuit instructs that "[i]n determining a statute's plain meaning, we assume that, absent any contrary definition, 'Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning.' . . . If the language is clear, then the inquiry should end." *Gaddis v. United States*, 381 F.3d 444, 472 (5th Cir. 2004) (quoting *Boyce v. Greenway (In re Greenway)*, 71 F.3d 1177, 1179 (5th Cir. 1996) (internal quotations and citations omitted)). "It is not the job of the courts to legislate, and the Supreme Court has counseled that where the statutory language is plain, 'the sole function of the court is to enforce it according to its terms.'" *Greenway*, 71 F.3d at 1180 (citing *Ron Pair Enterprises, Inc.*, 489 U.S. at 241, 109 S.Ct. at 1030 (1989)).

The wording of the 910-day provision is plain in that it simply makes § 506 inapplicable to certain secured claims, and clearly limits itself to paragraph (5) of § 1325(a), stating: "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if. . ." and then goes on to list the conditions that make this paragraph applicable. It does not make

§ 1325 or any Code provision, other that § 506, inapplicable to these claims. It does not alter the present value requirement of § 1325(a)(5)(B)(ii), or the ability to modify a secured car creditor's rights under § 1322(b)(2).

### A Secured Creditor's Claim Does Not Include Unmatured Interest

The Court's first step in the analysis of a claim, including the claim of a 910-day car creditor, is to look to § 502. Velocity has not objected to the valuation of the car under the Plan, so the Court will assume that the car's value as of the petition date provided in the Plan is correct. Velocity does object to the interest rate provided by the Debtor to be paid over the life of the Plan and asserts that it must be equal to the interest rate provided in the contract. As the Court sees it, this assertion is incorrect because of § 502(b)(2), which provides that if a debtor objects to a claim as filed, "the court after notice and hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim . . . except to the extent that–(2) such claim is for unmatured interest. 11 U.S.C. § 502(b)(2). The interest payments provided for under the Centrix loan documents to be made postpetition had not yet matured on the petition date, since they had not yet become due. Therefore, pursuant to § 502(b)(2), the interest payments provided are not included as part of the claim to be paid under the Plan.

### What Is the Appropriate Interest Rate?

The question then generally becomes–what rate of interest is due to be paid to a secured creditor under a plan by a debtor who elects to retain a vehicle over the objection of the secured car creditor by making periodic payments over the life of the plan to provide value equal to the allowed amount of such claim, pursuant to § 1325(a)(5)(B)(ii) and sufficient to provide adequate protection, pursuant to § 1325(a)(5)(B)(iii)(II)?

The Supreme Court in *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), addressed the issue of the appropriate rate of interest to be applied under § 1325(a)(5)(B)(ii). Writing for the plurality, Justice Stevens found that the Bankruptcy Code "provides little guidance as to which of the rates of interest . . . Congress had in mind when it adopted [§ 1325(a)(5)(B)]." *Till*, 541 U.S. at 473. It merely requires that the plan "ensure that the property to be distributed to a particular secured creditor . . . has a total 'value, as of the effective date of the plan' that equals or exceeds the value of the creditor's allowed secured claim." *Id*. at 474. Of course,

> That command is easily satisfied when the plan provides for a lump-sum payment to the creditor. Matters are not so simple, however, when the debt is to be discharged by a series of payments over time. A debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment. The challenge for bankruptcy courts reviewing such repayment schemes, therefore, is to choose an interest rate sufficient to compensate the creditor for these concerns.

*Id*. Justice Stevens went on to say that determination of the proper rate of interest involves three considerations. First, the Bankruptcy Code includes numerous provisions that, like the cramdown provision, require a court to "discoun[t] . . . [a] stream of deferred payments back to the[ir] present dollar value," *Rake v. Wade*, 508 U.S. 464, 472 n. 8, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), to ensure that a creditor receives at least the value of its claim. We think it likely that Congress intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of these provisions. *Id*. Second, Section 1322(b)(2) "expressly authorizes a bankruptcy court to modify the rights of a creditor whose claim is secured by an interest in anything other than 'real property that is the debtor's principal residence'. . . . Thus, in cases like this involving secured interests in personal property, the court's

authority to modify the number, timing, or amount of the installment payments from those set forth in the debtor's original contract is perfectly clear." *Id*. at 475. Third, "although 11 U.S.C. § 1325(a)(5)(B) entitles the creditor to property whose present value objectively equals or exceeds the value of the collateral, it does not require that the terms of the [plan] match the terms to which the debtor and creditor agreed prebankruptcy." *Id*. at 476. "Rather, the court should aim to treat similarly situated creditors similarly." *Id*. at 477.

Taking these three considerations in mind, the "formula rate" was determined by the plurality to provide the proper rate of interest. The formula rate begins with the national prime rate and adjusts upward based on several factors, including the "circumstances of the estate, the nature of the security, and the duration and feasibility of the plan." *Id*. at 479.

### Does the Interest Rate Calculation Provided in *Till* Apply to 910-day Car Claims?

Velocity contends that the ruling in *Till* does not apply to 910-day car claims. Velocity makes several arguments in support of this position. Velocity's first argument is that because § 506 no longer applies to 910-day car claims, the basis for valuation of its secured claim under § 1325(a)(5)(B)(ii) no longer applies, and we are therefore left with only the contract to look to for valuation and the interest to be applied. As previously discussed, the amount of a creditor's secured claim is determined and allowed pursuant to § 502. While § 506(a) can no longer be used to bifurcate 910-day car claims into a secured claim and an unsecured claim and the creditor must be given a secured claim for the entire amount remaining to be paid under the contract loan documents as of the petition date, that claim cannot include the unmatured interest called for under the loan documents, pursuant to § 502(b)(2). Thus, the analysis under § 1325(a)(5)(B)(ii) is still a determination of the value to be distributed under the plan, as described in *Till*.

Velocity's second argument is that the *Till* decision only applies in strip down cases, and since its claim cannot be bifurcated pursuant to the 910-day provision, the interest rate cannot be the "stripped down" interest rate provided in *Till*. However, although *Till* interpreted the interest rate to be paid in a case involving the cramdown of a stripped down secured claim, the decision did not limit itself only to strip down cases. Rather, *Till* applies in all Chapter 13 cases which are being confirmed over the objection of a secured creditor using the cramdown option under 11 U.S.C. § 1325(a)(5)(B)(ii). *In re Fleming,* 339 B.R. 716, 722 (Bankr. E.D. Mo. 2006) ("The 910 Day Car Language has no impact on the requirement to pay present value set forth in Section 1325(a)(5)(B)(ii) other than to clarify the dollar amount of the claim which must receive present value. *Till* still controls what interest rate is required to ensure present value"); *In re Robinson,* 338 B.R. 70, 75 (Bankr. W.D. Mo. 2006) ("I conclude that the BAPCPA amendment did not overrule *Till*").

### Has the Supreme Court's Ruling in *Till* Been Abrogated?

Velocity's third argument is that if *Till* can be construed to apply in non-strip down cases, then because Congress clearly intended to carve out a "safe harbor" for automobile lenders with the BAPCPA amendments to § 1325(a), *Till* has been abrogated by these amendments for 910-day car claims. The BAPCPA was signed into law on April 19, 2005, eleven months after *Till* was decided. Justice Stevens noted in a footnote within *Till*, that "if we have misinterpreted the intended meaning of 'value, as of the date of the plan,' we are confident Congress will enact appropriate remedial legislation." *Till*, 541 U.S. at 480 n.19. Congress did not give any indication in drafting the 910-day provision that it intended to overrule *Till*.

First, "[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250 (1982) (internal quotations omitted). "It is well established that 'when the statute's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms.' " *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). The BAPCPA makes no reference to *Till*, or to the interest rate to be used for payment of claims that fall under the 910-day provision.

Second, it is also well established that "if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Prot.*, 474 U.S. 494, 501, 106 S.Ct. 755, 759 (1986). For example, when Congress wanted to exempt the prepetition rights of holders of purchase money security interests in real property that is a debtor's principal residence from modification in a plan, it did so by explicitly amending § 1322(b)(2). But Congress, in enacting the BAPCPA, neither amended § 1322(b), nor amended § 1325(a)(5) to provide that interest on claims subject to the 910-day provision be paid at the contract rate or any other rate. In fact, just as described by Justice Stevens in *Till*, § 1325(a)(5)(B) still does not mention the term "discount rate" or the word "interest." *Till*, 541 U.S. at 473.

This issue is discussed by Judge Federman in a recent decision interpreting the 910-day provision. *In re Robinson*, 338 B.R. 70, 74-75 (Bankr. W.D. Mo. 2006). "Had Congress intended to create a complete safe harbor for the automobile lender with a purchase-money

security interest, it could have expressly done so, but it did not. Indeed, the law permits

modification of the rights of secured creditors." *Id*. at 74.  In looking for guidance from the

legislative history, Judge Federman addressed Justice Steven's comment that "if we have

misinterpreted the intended meaning of 'value, as of the date of the plan,' we are confident

Congress will enact appropriate remedial legislation," *Till*, 541 U.S. at 480 n.19, and stated that:

> Congress obviously had the opportunity to enact "appropriate remedial legislation"
> as to interest rates in BAPCPA, but it did not do so.
>
> In addition, the legislative history of the amendments to § 1325, although relatively
> scant, supports the conclusion that Congress did not intend to overturn *Till* and
> mandate a contract rate of interest for secured creditors.   According to one of the
> House Reports relating to the protections for secured creditors afforded in BAPCPA:
>
>> [The new law]'s protections for secured creditors include a prohibition against
>> bifurcating a secured debt incurred within the 910-day period preceding the
>> filing of a bankruptcy case if the debt is secured by a purchase money security
>> interest in a motor vehicle acquired for the debtor's personal use.  Where the
>> collateral consists of any other type of property having value, [the new law]
>> prohibits bifurcation of specified secured debts if incurred during the one-year
>> period preceding the filing of the bankruptcy case.   The bill clarifies current
>> law to specify that the value of a claim secured by personal property is the
>> replacement value of such property without deduction for the secured
>> creditor's costs of sale or marketing.   In addition, the bill terminates the
>> automatic stay with respect to personal property if the debtor does not timely
>> reaffirm the underlying obligation or redeem the property.   [The new law]
>> also specifies that a secured claimant retains its lien in a chapter 13 case until
>> the underlying debt is paid or the debtor receives a discharge.
>
> H.R. Rep. 109-31(I), pt. 1, at 17 (April 8, 2005), *reprinted in* 2005 U.S.C.C.A.N. 88,
> 103 (footnote omitted).  Nowhere does the Report mention an amendment relating
> to interest rates or *Till.*

*Id*. at 75.  The ruling in *Till* must certainly have been on the minds of the drafters of the

BAPCPA, being handed down from the Supreme Court less that one year prior to its enactment,

and yet Congress chose not to address it.

Third, "when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 452, 122 S.Ct. 941, 951 (2002) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). "The more apparently deliberate the contrast, the stronger the inference, as applied, for example, to contrasting statutory sections originally enacted simultaneously in relevant respects." *Field v. Mans,* 516 U.S. 59, 75, 116 S.Ct. 437, 446 (1995). When the 910-day provision was added to protect certain secured creditors from cramdown, the BAPCPA also added a new provision to § 1322 to protect loans made to the debtor from certain retirement accounts. *See* 11 U.S.C. 1322(f). Section 1322(f) prohibits a plan from materially altering the terms of a loan described in section 362(b)(19).[6] Section 1322(f) states that "A plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts

---

[6] Section 362(b)(19) provides in pertinent part:

(b) The filing of a petition . . . does not operate as a stay–

\*\*\*

(19) under subsection (a), of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer–

(A) to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986; or

(B) a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;

required to repay such loan shall not constitute 'disposable income' under section 1325." 11 U.S.C. § 1322(f). If Congress had wanted 910-day car claims to have been paid without material alteration to their contract terms, it could have said so. It chose instead to simply protect them from bifurcation.

Finally, the majority of courts that have had the opportunity to look at this issue, have applied *Till* in determining the proper amount of interest to pay 910-day claims under § 1325(a)(5)(B)(ii). *See*, *e.g.*, *In re Pryor*, 341 B.R. 648, 651-52 (Bankr. C.D. Ill. 2006); *In re DeSardi*, 340 B.R. 790, 814 (Bankr. S.D. Tex. 2006); *In re Brown*, 339 B.R. 818, 822 (Bankr. S.D. Ga. 2006); *In re Fleming,* 339 B.R. 716, 723-24 (Bankr. E.D. Mo. 2006); *In re Wright,* 338 B.R. 917, 919 (Bankr. M.D. Ala. 2006); *In re Robinson,* 338 B.R. 70, 75 (Bankr. W.D. Mo. 2006); *In re Johnson,* 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006). This Court finds that the holding in *Till* has not been disturbed by the 910-day car provision added to the Code by the BAPCPA, and that *Till* still controls what interest rate is required to ensure present value under § 1325(a)(5)(B)(ii).

### How is Adequate Protection Provided?

The BAPCPA also enacted new § 1325(a)(5)(B)(iii)(II), which requires that the amount of periodic payments made to the holder of a claim secured by personal property over the life of a plan "shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan." 11 U.S.C. § 1325(a)(5)(B)(iii)(II). The adequate protection to be provided under § 1325(a)(5)(B)(iii)(II) is not further defined. The closest analogy the Court can make is the adequate protection defined in 11 U.S.C. § 361, as it applies to §§ 362, 363 and 364. Section 361 provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by–

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. Sections 362, 363 and 364 apply to Chapter 13 debtors. For instance, adequate protection must be given to secured creditors, or they may ask that the automatic stay imposed by §362(a) be lifted. *See* 11 U.S.C. § 362(d)(1). So, it is not readily apparent as to how this language has added an additional burden on debtors wishing to confirm their plans.[7] Nevertheless, it is now there and needs to be addressed.

_____

[7]Since these Code sections already provide for adequate protection to be provided by Chapter 13 Debtors prior to Plan confirmation, the inclusion of the adequate protection language provided under a plan in § 1325(a)(5)(B)(iii)(II) and for the period prior to plan confirmation provided in Code § 1326(a)(1)(C), also enacted under the BAPCPA, may have been added to simply make explicit the fact that adequate protection payments must commence within thirty days of the filing of the filing of a plan or the order for relief, whichever is earlier, and then continue throughout the life of the plan, but the legislative history as to this point is lacking. Perhaps this language was added to make clear that plans that include "step-payment" provisions, where the payments usually increase over time, or those that would provide for payments to secured creditors to commence months after confirmation are now prohibited, unless the debtor can show that adequate protection is being provided to secured creditors.

Also, this may at least have resolved the issue of whether or not a creditor may seek relief from the stay based on a lack of adequate protection after confirmation of a plan, "because the issue of adequate protection should have been raised before confirmation and confirmation of the plan is *res judicata* on the issue of adequate protection." 8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][ii][B] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006).

In the context of § 362, the Fifth Circuit has stated that "[a]dequate protection, properly defined, is the amount of an asset's decrease in value from the petition date." *In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)).  The Court finds, especially in light of the fact that Velocity has not objected to the amount of the payments provided under the Plan, other than to the interest rate provided, that payment of its claim in full over the life of the Plan at an interest rate that protects the "value" of this claim as of the petition date, as provided for in *Till*, is adequate to meet this standard.

## IV. Conclusion

In conclusion, the Supreme Court's holding in *Till* has not been abrogated by the BAPCPA, and the interest rate provided in a debtor's Chapter 13 plan to the claim of a creditor secured by a purchase money interest in a motor vehicle obtained within the 910-day period preceding the petition date is to be calculated in accordance with the *Till* decision. Neither the rate of 6.5% asserted by the Debtor in her plan, nor the contract rate provided by Velocity meet this requirement. The plan as drafted does not contain postponed payments or step-payments. With the proper rate of interests provided, the Court finds that paying equal monthly payments over the life of the plan based on the non-bifurcated claim provides adequate protection to Velocity as required by § 1325(a)(5)(B)(iii)(II).

The Court will deny confirmation of the Debtor's Plan and will require that the Debtor file an amended plan in compliance with this decision within twenty days from the date of entry of the order implementing this opinion. Should Velocity object to the risk adjustment to the prime rate provided by the Debtor in her amended plan, it may file an objection, and the Court will set the matter for hearing.

A separate order will be entered consistent with this opinion.

###End of Memorandum Opinion###